1  MARCO QUAZZO (SBN 142182)
   MBV LAW LLP
2  855 Front Street
   San Francisco, CA 94111
3  Telephone:    (415) 781-4400
   Facsimile:    (415) 989-5143
4
   Attorneys for Cross-Defendant
5  CLIFTON WARREN

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | FLUKE ELECTRONICS CORPORATION, | Case No. C08-01188 JW |
   | a Washington corporation, | |
12 | | |
   | | **CLIFTON WARREN'S NOTICE OF** |
13 | Plaintiff, | **AND BRIEF IN SUPPORT OF MOTION** |
   | | **TO COMPEL ARBITRATION** |
14 | v. | |
   | | **(9 USC §4)** |
15 | STEPHEN MANGELSEN, | |
16 | Defendant. | |
17 | | |
   | | Hearing Date:  November 3, 2008 |
18 | STEPHEN MANGELSEN, | Hearing Time:  9:00 a.m |
   | | Department:    8 |
19 | Cross-Complainant, | Judge:         Hon. James Ware |
20 | v. | |
21 | | |
   | CLIFTON WARREN, an individual; FLUKE | |
22 | ELECTRONICS CORPORATION, a Delaware | |
   | corporation; inclusive, | |
23 | | |
24 | Cross-Defendants. | |

25

26

27

28

---

CLIFTON WARREN'S NOTICE OF AND BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION –
CASE NO. C08-01188 JW

22885.12/397287.DOC

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 3, 2008, at 9:00 AM or as soon thereafter as the matter may be heard in the courtroom of the Honorable James Ware, Department 8, located at 280 South First Street, San Jose, California 95113, Cross-Defendant Clifton Warren ("Warren" or "Shareholder Representative") will move for an order to compel arbitration of Stephen Mangelsen's cross-claims against the Shareholder Representative.

Pursuant to the Federal Arbitration Act, 9 USC §§1-14, the Shareholder Representative moves to compel arbitration of the Third, Fourth and Fifth Causes of Action of the Cross-Complaint filed by Stephen Mangelsen ("Mangelsen"). Each cause of action is asserted against the Shareholder Representative only. Each cause of action arises from the Shareholder Representative's obligations under the Merger Agreement between Fluke and Raytek, which contains an arbitration provision. Mangelsen agreed in writing that the arbitration provision in the Merger Agreement would govern all disputes with the Shareholder Representative arising out of the Merger Agreement and the transactions contemplated therein. Accordingly, the Shareholder Representative requests the Court to enforce the arbitration agreement and dismiss all cross-claims that Mangelsen has asserted against him in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Issues To Be Decided

The Shareholder Representative's motion requires the court to decide the following issues: (1) whether to compel arbitration of the Third, Fourth and Fifth Causes of Action of the Cross-Complaint; and (2) whether to dismiss these Causes of Action.

### II.  Statement of Facts

Warren is the former Chief Executive Officer of Raytek Corporation ("Raytek"). Mangelsen is the former Chief Financial Officer, and until 2002 was a significant shareholder of Raytek. Fluke Electronics Corporation ("Fluke") acquired Raytek in 2002 pursuant to an Agreement and Plan of Merger dated August 22, 2002 ("Merger Agreement"). *See* Declaration of Clifton Warren ("Warren Decl."), Ex. 1.

Raytek was the subject of several patent infringement claims at the time of the merger. The

1

selling Raytek shareholders ("Common Equityholders"), including Mangelsen, agreed to indemnify Fluke, subject to certain limitations, as to the pending patent litigation. *See* Merger Agreement, § 9.2 *et seq*. Because the Common Equityholders numbered approximately 100 individuals, and in order to efficiently administer the defense and/or settlement of any claims for indemnity asserted by Fluke, Warren was appointed under the Merger Agreement as the "Representative" of the Common Equityholders. The Merger Agreement vested the Shareholder Representative with "full power and authority to make, on behalf of the Common Equityholders, all decisions relating to the defense and/or settlement of" any indemnity claims asserted by Fluke. *Id.*, § 9.10(a).

After the Merger, Fluke filed an arbitration action against the Shareholder Representative and the Common Equityholders seeking payment of alleged indemnity obligations. The Shareholder Representative defended, and ultimately settled, the arbitration action on behalf of the Common Equityholders. By his cross-complaint, Mangelsen is now challenging the Shareholder Representative's handling of the defense and settlement of Fluke's claims.

The Merger Agreement contains an arbitration provision. Section 10.13 states, in pertinent part:

> [A]ny dispute, claim or controversy arising out of, in connection with or relating to this Agreement (including without limitation, all disputes and claims arising under Article 9), including any question regarding its formation, existence, validity, enforceability, performance, interpretation, breach or termination, shall be finally resolved by arbitration administered by the American Arbitration Association ("AAA") in accordance with its Commercial Arbitration Rules. There shall be three neutral and independent arbitrators . . . . The place of the arbitration shall be Los Angeles, California. The parties agree that the arbitration shall be conducted expeditiously; to that end, if reasonable, the parties intend for a final award to be issued within 120 days from the date of the filing of written demand to arbitrate, and in no event more than 365 days from the date of the filing of the written demand to arbitrate. The final award shall be reasoned and in writing, and shall be final, conclusive and binding. Judgment on any award rendered by the arbitrators may be entered in any court of competent jurisdiction. The arbitrators shall allocate the costs and expenses of the arbitrators and administrative fees of the arbitration among the parties as the arbitrators determines to be appropriate under the circumstances. Except as provided in the preceding sentence, each party to the arbitration shall bear its own costs and expenses.

As part of the Merger Agreement, each Common Equityholder including Mangelsen completed and signed a "Transmittal Agreement," the form of which was attached as Exhibit C to the Merger Agreement. *See* Warren Decl., Ex. 2. Upon signing the Transmittal Agreement , Mangelsen

received approximately $3.75 million for his Raytek shares. *Id.*, ¶ 4.[1] In doing so, Mangelsen acknowledged that he was "fully aware of the contents of the Merger Agreement" and agreed that he would be bound by "the provisions of this Transmittal Agreement." Transmittal Agreement, p. 1. Mangelsen specifically acknowledged "the terms and conditions of the indemnification obligations set forth in Article 9 of the Merger Agreement" and agreed to "be bound by all such terms and conditions, including, without limitation, the appointment of Clifton Warren as [his] representative…." *Id.*, p. 2.

Finally, Mangelsen in the Transmittal Agreement "acknowledge[d] the terms and conditions of the arbitration provisions set forth in Section 10.13 of the Merger Agreement and agree[d] that all disputes between or among [Mangelsen] … and any party to the Merger Agreement arising out of the Merger Agreement, this Transmittal Agreement and the transactions contemplated thereby and hereby shall be governed by such Section 10.13…" *Id.*, pp. 3-4. The Shareholder Representative was a party to and signed the Merger Agreement as the Representative of the Common Equityholders. Warren Decl., Ex. 1, pp. 1 and 73.

## III. Argument

The Federal Arbitration Act, 9 USC §§1-14 (the "FAA"), governs contractual arbitration in written contracts involving interstate or foreign commerce. The Merger Agreement qualifies as such because it involves the merger of a California and Delaware corporation. The FAA embodies a strong federal policy favoring arbitration. *Allied-Bruce Terminix Cos., Inc. v. Dobson* (1995) 513 US 265, 270, 115 S.Ct. 834, 838. In particular, the FAA provides that "[a] written provision . . . to settle by arbitration a controversy thereafter arising . . . shall be *valid, irrevocable, and enforceable*, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 USC §2 (emphasis added). The FAA further provides that a motion to compel arbitration may be filed in any U.S. District Court that would otherwise have jurisdiction over the dispute. 9 USC §4. Because of the strong federal policy favoring arbitration, any doubts about enforcement will be resolved against

---

[1] Mangelsen admits in paragraph 5 of his Cross-Complaint that he sold all of his Raytek stock pursuant to the Merger Agreement.

the party asserting such defense "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.* (1983) 460 US 1, 24, 103 S.Ct. 927, 941-942.

The arbitration provision in the Merger Agreement uses the most "broad form" language possible: the arbitration agreement covers "any dispute, claim or controversy arising out of, in connection with or relating to" the Merger Agreement. *See* § 10.13. Such "broad form" language covers both contract and tort claims. *Fleet Tire Service of North Little Rock v. Oliver Rubber Co.* (8th Cir. 1997) 118 F.3d 619, 620; *Efund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1322-1323, 1326-1328, 59 Cal.Rptr.3d 340, 347-348, 351-352 (applying arbitration agreement to breach of fiduciary duty claim). The arbitration provision in the Merger Agreement is not only broad, but also makes specific reference to "disputes and claims arising under Article 9," which includes the article appointing Warren to represent the Common Equityholders with respect to Fluke's indemnity claims. Merger Agreement, §10.13. As discussed below, that is exactly the subject of Mangelsen's cross-complaint. Further, in the Transmittal Agreement Mangelsen agreed to arbitrate "all disputes" between himself and the Shareholder Representative "arising out of the Merger Agreement … and the transactions contemplated thereby." Transmittal Agreement, pp. 3-4.[2]

The claims asserted by Mangelsen in his cross-complaint against the Shareholder Representative fall comfortably within the scope of the arbitration agreement. Mangelsen's cross-complaint alleges that the Shareholder Representative violated fiduciary duties that arose from his appointment, in the Merger Agreement, to act as the Representative of the Common Equityholders. In particular, the Cross-Complaint alleges that:

- The Merger Agreement gave Warren the responsibility to act as the agent for the Common Equityholders (¶7);

- Warren purported to act as the agent for Mangelsen and the other Common Equity holders

---

[2] Independent of the existence of the Transmittal Agreement, Mangelsen is bound by the arbitration agreement contained within section 10.13 based on his status as a third-party beneficiary of the Merger Agreement. *Barrowclough v Kidder Peabody & Co., Inc.* (3rd Cir. 1985) 752 F.2d 923, 938 (overruled on other grounds by *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (3rd Cir. 1993) 7 F.3d 1110).

        in defending and settling the indemnity claims asserted by Fluke after execution of the Merger Agreement (¶9); and

- Warren wrongfully failed to seek Mangelsen's approval or consent before executing the settlement agreement with Fluke on behalf of Mangelsen and the other Common Equityholders (¶14).

Further, each cause of action that Mangelsen asserts against the Shareholder Representative arises from the Merger Agreement and his appointment therein as the Representative of the Common Equityholders. The Third Cause of Action for breach of fiduciary duty alleges that Warren bore the Common Equityholders fiduciary duties based on Warren's status as their agent, and further alleges that Warren failed to act in the Common Equityholders' best interest. Cross-Complaint, ¶¶ 26-27. The Fourth Cause of Action demands an accounting for $400,000 that was set aside by the Merger Agreement for Warren's legal expenses as the Representative of the Common Equityholders. *Id.*, ¶ 31. The Fifth Cause of Action seeks indemnity based on Warren's alleged wrongful activities as the Common Equityholders' representative. *Id.*, ¶ 35.

Thus, each cause of action against the Shareholder Representative in the cross-complaint falls within the meaning of the arbitration agreement because it arises "out of the Merger Agreement … and the transactions contemplated thereby." Any doubt as to whether a particular dispute falls within the arbitration clause is to be resolved in favor of arbitration. *AT&T Technologies, Inc. v. Communications Workers of America* (1986) 475 US 643, 650, 106 S.Ct. 1415, 1419. Mangelsen therefore must be compelled to arbitrate his claims against the Shareholder Representative.

Granting the Shareholder Representative's motion to compel arbitration will allow the instant litigation to proceed unabated. Fluke filed this action, against Mangelsen only, in February 2008. Mangelsen waited four months, until July 2008, to add the Shareholder Representative as a party, and then waited another month before serving a summons on the Shareholder Representative. By that point the Court had already issued its scheduling order setting dates for the close of discovery and the hearing of dispositive motions before year end. Plainly, this is a dispute between Fluke and Mangelsen. The Shareholder Representative was added as a party in this case as an afterthought. Granting the Shareholder Representative's motion to compel arbitration would enable the dispute

5

between Fluke and Mangelsen to be resolved sooner, and also allow Mangelsen the opportunity to initiate arbitration proceedings against the Shareholder Representative if and when he chooses to take such action.

## IV.     Conclusion

The dispute between Mangelsen and the Shareholder Representative does not belong in this Court. It belongs in arbitration. For all the reasons set forth above, cross-defendant Clifton Warren respectfully requests that the Court grant his motion to compel arbitration and dismiss the Third, Fourth, and Fifth Causes of Action in Mangelsen's cross-complaint.

DATED: August 26, 2008            MBV LAW LLP


                                  By:    /s/
                                       MARCO QUAZZO
                                       Attorneys for Cross-Defendant
                                       CLIFTON WARREN